*NOT FOR PUBLICATION*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL CRAWFORD, | : |
| Plaintiff, | : |
| v. | : Civ. Action No. 13-5088 (FLW)(DEA) |
| VITO ROSELLI, RICHARD B. MARX and THOMAS SCANZANO, Individually and in their Official Capacities | : OPINION |
| Defendants. | : |

**WOLFSON, United States District Judge:**

This action concerns the federal government's allegedly unlawful failure to return property to *pro se* plaintiff Carl Crawford ("Plaintiff" or "Crawford"). Specifically, Crawford asserts that defendants Federal Bureau of Investigations ("FBI") Special Agent Vito D. Roselli ("Roselli"), Supervisory Special Agent Richard B. Marx ("Marx"), and Special Agent Thomas Scanzano ("Scanzano"), (collectively, "United States" or "Government") unlawfully gave $1,430 in cash belonging to Crawford to the Commonwealth Bank without instituting forfeiture proceedings, in violation of Crawford's Fourth, Fifth, and Eighth Amendment rights. Presently before the Court is a motion to dismiss filed by the Government, asserting, *inter alia*, that Plaintiff's action is barred by the statute of limitations. For the following reasons, the Court concludes that Crawford's motion is barred by the statute of limitations and accordingly dismisses Plaintiff's Complaint.

## I. Background and Procedural History

The following allegations from Plaintiff's Complaint and the affidavit he attaches as an

exhibit[1] are accepted as true for the purposes of this motion to dismiss.[2] On or about January 16, 2003, the Commonwealth Bank at 6537 Castor Avenue in Philadelphia was robbed by two black males. Compl. Aff. at ¶ 1. The robbers escaped in a green Chevrolet Malibu and seized about $136,000 in U.S. currency from the bank. *Id.* at ¶ 2. Approximately thirty minutes later, local police and FBI agents Marx, Roselli and Keith Holdworth arrived on the scene of the bank and interviewed the bank witnesses. *Id.* at ¶ 3. The agents found a green Malibu that was "positively identified by bank employees of the bank as the car previously observed at the bank." *Id.* at ¶ 6. After searching the car and finding $35 in U.S. currency in the trunk, among other evidence, the agents traced the car and residence to Lucerne Faulkner. *Id.* at ¶¶ 10–11. The agents then established surveillance on the Malibu as well as Faulkner's residence. *Id.* at ¶ 12.

Crawford states that after the agents observed Crawford dropping off Lucerne Faulkner at the Malibu, Crawford was arrested, searched, and "falsely accused [of] armed bank robbery." *Id.* at ¶¶ 14, 15. When Crawford was searched, the agents "retrieved [Crawford's] property of [a] pink registration auto slip, cellular phone, and about $90.00 US currency out of [Crawford's] jeans." *Id.* at ¶ 15. However, Crawford "possessed $1430 underneath his jeans that was located in his sweatpants pocket that Marx didn't detect when he searched [Crawford]." *Id.* at ¶ 17. While Crawford was being "transported and temporarily detained in Marx's gold-colored bureau Chevy Impala for investigation," Crawford "placed his money in the rear seat of the vehicle" because "he knew that the federal agents . . . would have assumed that [the money] was contraband in relation

---

[1] Generally, a district court ruling on a motion to dismiss "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

[2] A summary of the lengthy and protracted history of this case is outlined in my 2013 opinion on Plaintiff's Rule 41(g) motion. *See United States v. Crawford*, Crim. No. 03-105, 2013 WL 1442554 (E.D. Pa. Apr. 8, 2013).

to the bank robbery." *Id.* at ¶¶ 18, 19. According to Crawford, it was not until June 9, 2003 that Marx noticed the money Crawford had stashed in Marx's Impala, when Marx and Scanzano conducted a search of the car. *Id.* at ¶ 25. Crawford states that "[t]he money appeared to be segregated by denominations of 5s and 20s and a few of the bills had the appearance of possible bank band stamps." *Id.* at ¶ 27.

Crawford was subsequently charged with armed robbery, conspiracy to commit armed robbery, and carrying a firearm during a crime of violence, and proceeded to trial on or around January 4, 2004. *Id.* at ¶ 30. According to Crawford, "the Government put on the evidence-in-chief[] [Crawford's] $1430 as alleged contraband [in] the robbery . . . trial." *Id.* at ¶ 32. On or around January 14, 2004, he was acquitted of all counts. *Id.* at ¶ 31. Crawford was also charged with being a felon in possession of a firearm and possession with intent to distribute cocaine; those charges were severed from the above counts and a separate trial ensued, beginning on or about March 5, 2004. *Id.* at ¶¶ 33–34. Crawford was convicted in his second trial. *Id.* at ¶ 34.

On September 7, 2004, Carl Crawford filed the first of several *pro se* motions relating to the return of seized property. Compl. at ¶ 1. On September 26, 2004, the Eastern District of Pennsylvania denied Crawford's motion. *Id.* at ¶ 2. Crawford "did not file any other motion relating to the return of seized property until April 19, 2010." *Id.* at ¶ 3. Crawford "subsequently filed several motions between April 2010 and April 2011 relating to [his] property including the $1430." *Id.* at ¶ 4. "Without a ruling on any of [Crawford's] motions, on March 23, 2012, [Crawford's] personal property of miscellaneous articles and about $96.86 US currency was advanced to [Crawford's] family." *Id.* at ¶ 5. However, the $1,430 in cash was not returned. *Id.*

On September 7, 2012, Crawford alleges that he sent a demand letter to the FBI, requesting the return of his $1430. *Id.* at ¶ 6. On December 10, 2012, Crawford received a response from the

FBI, "stating that the currency was returned to the Commonwealth Savings Bank in Philadelphia, PA due to the fact that the $1,430.00 in U.S. currency was determined to have been proceeds from the bank robbery." *Id.* at ¶ 7.

Crawford then filed a Rule 41(g) motion on December 17, 2012, seeking the return of the $1,430 in cash. *Id.* at ¶ 8. This Court, after holding an evidentiary hearing, found that Crawford had a continuing, valid property interest in the $1,430 in cash. Compl. Aff. at ¶ 41.

Thereafter, on August 26, 2013, Plaintiff initiated this lawsuit, seeking the return of the $1,430 in cash as well as compensatory and punitive damages. Plaintiff's Complaint alleges that the Government violated his Fourth, Fifth, and Eighth Amendment rights when the Government returned the $1,430 in cash to the Commonwealth Bank instead of initiating forfeiture proceedings. On June 16, 2014, the Government filed this motion to dismiss, arguing that Plaintiff's claims were time-barred and, in the alternative, that the Government was entitled to qualified immunity.[3]

## II. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. The Court held that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court has explained that principle. First, "the tenet

---

[3] On July 7, 2014, Plaintiff moved for summary judgment; however, the Court stayed the Government's deadline to respond to Plaintiff's motion until after the Court ruled on the Government's motion to dismiss.

4

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-49 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1949. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Moreover, in deciding a motion to dismiss, the Court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of Plaintiffs' claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." *Id.* That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id.* (citations and quotations omitted).

### III. Analysis

Plaintiff asserts his claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389, (1971), in which the Supreme Court created a federal counterpart to the remedy created in 42 U.S.C. § 1983. *See Egervary v. Young*, 366 F.3d 238, 246 (3d Cir.2004) (stating that *Bivens* actions are the federal counterpart to Section 1983). In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution and

laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006) (stating that under Section 1983, "an individual may bring suit for damages against any person who, acting under color of state law, deprives another individual of any rights, privileges, or immunities secured by the United States Constitution or federal law," and that *Bivens* held that a parallel right exists against federal officials); *see also Collins v. F.B.I.*, Civ. No. 10–3470, 2011 WL 1627025, at *6 (D.N.J. Apr. 28, 2011) ("The Third Circuit has recognized that *Bivens* actions are simply the federal counterpart to § 1983 claims brought against state officials and thus the analysis established under one type of claim is applicable under the other.").

The Government asserts that Plaintiff's claim is time-barred. "A *Bivens* claim . . . is 'characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims.'" *Peguero v. Meyer*, 520 Fed. App'x 58, 60 (3d Cir. 2013) (quoting *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). In Pennsylvania, the statute of limitations for personal injury claims is two years. *See, e.g., Wilkerson v. Samuels*, 524 Fed. App'x 776, 778 (3d Cir. 2013). However, determining when a *Bivens* cause of action accrues is a matter of federal law, *Smith v. Wambaugh*, 887 F.Supp. 752, 755 (M.D. Pa. 1995), and a *Bivens* claim accrues when the plaintiff knows of or has reason to know of the injury. *Hughes v. Knieblher*, 341 Fed. App'x 749, 752 (3d Cir. 2009) (citing *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)). A district court must incorporate state equitable tolling principles, unless they conflict with federal law and policy. *Lake v. Arnold*, 232 F.3d 360, 369 (3d Cir. 2000). "Equitable tolling is a rare remedy to be applied in unusual circumstances." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). According to the Third Circuit, tolling is generally only appropriate "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2)

where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009); *see also Omar v. Blackman*, --- Fed. App'x ---, No. 13-4542, 2014 WL 5032477, at *2 (3d Cir. Oct. 9, 2014). To obtain the benefit of equitable tolling, a party also must show that "she exercised due diligence in pursuing and preserving her claim." *Omar*, --- Fed. App'x ---, 2014 WL 5032477, at *2 (quoting *Santos*, 559 F.3d at 197).

According to the Government, Plaintiff's cause of action accrued at the conclusion of Plaintiff's January 2004 bank robbery trial or soon thereafter, at which point, according to the Government, "Crawford knew that he left the $1,430 in the back of SSA Marx's vehicle a year earlier, that the government took possession of the $1,430 once it was discovered in June of 2003, and that the government argued that it was stolen from Commerce Bank in the course of the bank robbery."[4] Therefore, the Government contends, "[n]o reasonable person would expect the government to simply return the money to him under these circumstances," and, given that Plaintiff received no notice of any forfeiture proceedings, Plaintiff should have been on notice to investigate

---

[4] The Government further argues that Plaintiff also knew that "he had never told the FBI that the money was his and—to the contrary—that his attorney argued at trial that it was not his." Defs.' Br. at 5–6 (citing to the trial transcripts as well as Plaintiff's statements at the March 23, 2013 evidentiary hearing on Plaintiff's Rule 41(g)). However, Plaintiff did not plead as such in his Complaint and the Court will not consider this point for the purposes of this motion to dismiss analysis. *United States v. Balice*, Civ. No. 11-130 SCR, 2011 3485438, at *2 (D.N.J. July 21, 2011) (dismissing a motion to dismiss argument because "Defendant relies on facts outside the Complaint") (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007) "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground . . . ."); *see also In re Wellbutrin SR Antitrust Litig.*, Civ. No. 04-5525, 2006 WL 616292, at *7 (E.D. Pa. Mar. 9, 2006) (A defendant "cannot invoke the record in the underlying . . . actions to challenge factual allegations in the Complaint[].").

the status of the $1,430 in cash and attempt to recover the money as soon as possible following the conclusion of his robbery trial. *Id.* at 6. Because the Government claims that Plaintiff's cause of action accrued in 2004, the Government asserts that the statute of limitations ran out on Plaintiff's *Bivens* claim in 2006, well before Plaintiff filed the instant action.

However, Plaintiff asserts that his action accrued on March 24, 2013, the date of this Court's evidentiary hearing in connection with Plaintiff's Rule 41(g) motion, because only at that point did Plaintiff discover that his $1,430 was not in the Government's possession but had rather been given to the Commonwealth Bank.[5] Therefore, Plaintiff asserts, his *Bivens* action is not time-barred because he initiated the instant action in August 2013, less than six months after he discovered where the $1,430 in cash had gone.[6]

I previously found in my opinion granting an evidentiary hearing on Plaintiff's Rule 41(g) motion that Plaintiff should have known the critical fact that the Government had not returned to Plaintiff the $1,430 he had placed in SSA Marx's vehicle on November 5, 2004, the date judgment was entered in Plaintiff's second trial regarding his drug and weapons charges.[7] *Crawford*, 2013 WL 1442554, at *4; *see also* Dkt. 238, *U.S. v. Faulkner et al.*, Crim. No. 03-105 (E.D. Pa. 2004). In response to the Government's argument that the statute of limitations governing the return of

---

[5] However, Plaintiff asserts in his Complaint that he received a letter from the FBI on December 10, 2012, informing him "that the currency was returned to the Commonwealth Savings Bank in Philadelphia, PA due to the fact that the $1,430.00 in U.S. currency was determined to have been proceeds from the bank robbery." Compl. at ¶ 7.

[6] Plaintiff also relies on the Court's May 15, 2013 order on Plaintiff's Rule 41(g) motion, in which the Court stated that "should Crawford decide that he wishes to pursue his claim further, he may elect to file a *Bivens* action for damages." Pl.'s Opp. Br. Ex. A. However, the Court went on to state that "the Court does not make any findings regarding the potential merits of such an action," including whether such an action would be timely. *Id.*

[7] I take judicial notice of the date that judgment was entered in Plaintiff's second trial as well as of my prior finding as to when Plaintiff's cause of action relating to the return of his $1,430 accrued. *See In re Briscoe*, 448 F.3d 201, 221 (3d Cir. 2006).

Plaintiff's property began to run in January 2004, I stated in that opinion that I could not "reasonably conclude that Crawford's right to the return of the seized currency arose at the close of the January 2004 trial because it is uncertain whether Crawford was made fully aware at that point that the Government no longer relied on the seized currency in any form," and I reiterate that conclusion here. *Id.* However, by the close of Plaintiff's second trial, Plaintiff knew that the Government did not use the $1,430 in cash as evidence in his trial, and a reasonable person in his position would begin to investigate where his money had gone and how to recover it.

Further, despite Plaintiff's argument to the contrary, it is irrelevant that Plaintiff did not know that the Government had given the $1,430 to the Commonwealth Bank until 2013. *Gordon v. Lowell*, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000) ("The limitations period will begin to run even if Plaintiffs do not know all of the facts necessary for their claim . . . . They need only sufficient notice to alert them of the need to begin investigating."); *Zeleznik v. United States*, 770 F.2d 20, 22–23 (3d Cir. 1985), *cert. denied*, 475 U.S. 1108 (1986) ("The rationale of the discovery rule . . . is that the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he needs investigate to determine whether he is entitled to redress.").

Therefore, I find that Plaintiff's *Bivens* action accrued on November 5, 2004, because a reasonable person would have begun to investigate the Government's failure to return Plaintiff's $1,430 at that point. *See, e.g., Lopez v. Brady*, No. 4:CV-07-1126, 2008 WL 4415585, at *6 (M.D. Pa. Sept. 25, 2008) (setting the date on which the plaintiff's *Bivens* claim accrued as the date the plaintiff "had all the facts necessary for him to pursue or to begin to investigate those *Bivens* claims"). Therefore, the statute of limitations ran on Plaintiff's *Bivens* claim on November 4, 2006, absent equitable tolling.

Here, Plaintiff has not argued any facts that would allow the Court to consider equitably tolling the statute of limitations such that would render Plaintiff's action timely. Plaintiff has not provided explanation for why he did not (1) file any actions specifically seeking to recover the $1,430 until 2010, (2) send a demand letter to the FBI asking for the return of his $1,430 in cash until September 2012, *see* Compl. at ¶ 6, or (3) file this *Bivens* action until 2013, more than nine years after the conclusion of his robbery trial. Further, Plaintiff did file a petition seeking the return of his property on September 7, 2004, but he conspicuously omitted seeking the return of his $1,430[8] and thereafter did not file any other motions relating to the return of his property until April 2010; again, Plaintiff provides no reasoning for his delay in pursuing the return of his $1,430 in cash.[9] Thus, Plaintiff's cause of action accrued on November 5, 2004, and Plaintiff has not demonstrated any facts that would suggest Plaintiff's cause of action should be equitably tolled. *See, e.g., Mishra v. Nolan*, No. 2:05CV693, 2005 WL 3116038, at *2 (W.D. Pa. Nov. 22, 2005) *aff'd*, 187 Fed. App'x 136 (3d Cir. 2006) (finding that the plaintiff offered no "grounds that would support the

---

[8] The Government attaches Plaintiff's September 7, 2004 petition to its motion to dismiss. *See* Sept. 7, 2004 Petition, Def.'s Mot. to Dismiss Ex. C. The Court considers Plaintiff's September 7, 2004 petition to be integral to Plaintiff's Complaint and accordingly considers it contents for the purposes of this motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

In the petition, Plaintiff requests the return of his property seized by the Government pursuant to two search warrants, as well as the return of Plaintiff's Oldsmobile Aurora, seized upon Plaintiff's January 16, 2003 arrest. *See* Sept. 7, 2004 Petition at 1. He does not, however, make any mention of the $1,430 in cash that he left in the back seat of Marx's Impala. *See generally id.*

[9] Moreover, though Plaintiff is proceeding *pro se*, he filed a *Bivens* action on December 24, 2004 against five FBI agents and the presiding magistrate judge in his criminal case, "claiming they conspired to violate his constitutional rights under the Fourth and Fourteenth Amendments," and, when his lawsuit was dismissed, he appealed the judgment to the Third Circuit. *Crawford v. Frimel*, 337 Fed. App'x 211, 212 (3d Cir. 2009); *see also S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."). Thus, it is clear that Plaintiff was long aware of the mechanics of a *Bivens* action and was capable of filing such an action to recover his money long before filing the instant action, which further detracts from any potential argument in favor of equitable tolling.

application of the equitable tolling doctrine" and thus, holding that the plaintiff's *Bivens* action "was filed well after the statutory period had elapsed"). Therefore, Plaintiff's present *Bivens* action is barred by the statute of limitations.

Because Plaintiff's action is time-barred, the Court will not analyze whether the individual Government defendants are entitled to qualified immunity.

## IV. Conclusion

Plaintiff's Complaint is dismissed as time-barred. An appropriate order shall follow.

Date: February 11, 2015

/s/ Freda L. Wolfson
United States District Judge